# Hudgens *et al* v. Cameron's Administrator.

### Bill in Equity to enforce Vendor's Lien on Land.

1. *Payment for land in Confederate currency; vendor's lien.* — A payment in Confederate currency, in 1863, for land sold by an administrator, under an order of the probate court, on the 7th January, 1861, does not discharge the debt, except under peculiar circumstances, which must be affirmatively shown; but the land remains subject to the vendor's lien, at least as to the interest of those parties who did not accept the currency so paid.

2. *Who is purchaser for valuable consideration without notice.* — A sub-purchaser of land, sold by an administrator under an order of the probate court, is not chargeable with notice of the non-payment of the purchase-money, or of the fact that it was paid in Confederate currency, because his father, who was his immediate vendor, had notice; nor can he be charged with constructive notice, on account of the non-production of the deed to the original purchaser, or proof of its loss, when the record of the probate court recites the confirmation of the sale, and the payment of the purchase-money, and the administrator testifies, without objection, that he made a deed under the order of the court.

3. *Conclusiveness of recitals in probate decree, as to payment of purchase-money.* — Recitals in the decree of the probate court, confirming a sale of land made by an administrator under its order, as to the payment of the purchase-money, are not conclusive on a subsequent administrator, when seeking to enforce a vendor's lien on the land.

4. *Parties to bill to enforce vendor's lien.* — An administrator *de bonis non* may file a bill to enforce a vendor's lien on land, which was sold by the administrator in chief, under order of the probate court, for division among the heirs; and although the heirs themselves may also file such a bill, they are not necessary parties to the bill filed by the administrator.

APPEAL from the Chancery Court of Henry.
Heard before the Hon. B. B. McCRAW.

[Hudgens v. Cameron's Administrator.]

The bill in this case was filed on the 11th August, 1871, by James W. Balkum, as the administrator *de bonis non* of the estate of Angus Cameron, deceased, against Hamlin Hudgens, as the administrator *de bonis non* of the estate of Benjamin Askew, deceased, and Thomas J. and J. B. Hudgens, who were sons of said Hamlin Hudgens; and sought to enforce a vendor's lien for the unpaid purchase-money of a tract of land. The land belonged to said Angus Cameron at the time of his death, and was sold by his administrator-in-chief, under an order of the probate court, on the 7th January, 1861, for division among the heirs; and was bought at said sale by said Askew, whose heirs afterwards sold it to said Hamlin Hudgens, who sold and conveyed to his said two sons. The defendants demurred to the bill for want of equity, and for want of proper parties; and Thomas J. and J. B. Hudgens set up the defence of purchasers for valuable consideration without notice. The chancellor overruled the demurrer, and, on final hearing on pleadings and proof, rendered a decree for the complainant; and his decree is now assigned as error.

SEALS & WOOD, for appellants.

W. C. OATES, *contra.*

B. F. SAFFOLD, J. — The essential issue between the parties may be concisely stated as follows : The appellee, as administrator *de bonis non* of the estate of Angus Cameron, deceased, filed the bill to enforce the vendor's lien upon land of his intestate, sold under order of the probate court by his predecessors in the administration on the 7th of January, 1861, and paid for in Confederate money in 1863. The appellant defendants resist, on the ground that they are subsequent purchasers for valuable consideration without notice. The estate of Cameron was not in debt, and the sale was for division. Some of the heirs accepted their proportion of the Confederate currency, while others refused to do so, or, being minors, were unable to consent in any way. The sale was confirmed, and on a report of the payment of the purchase-money, the administrators were ordered to make title. The appellee was one of the sureties of the administrators in chief; and he alleges in his bill that he is the only solvent one. He is liable as such surety to those of the heirs of Cameron whose claims have not been satisfied.

Lands sold on the 7th of January, 1861, were not adequately paid for in 1863, with Confederate currency; or, if they were, the manner of its becoming so ought to be shown. It is not done in this case. The only question, therefore, for considera-

tion is, whether the defendants are *bonâ fide* purchasers for value without notice, having paid the purchase-money.

The only witness examined on behalf of the complainant was R. T. Hudspeth, one of the two administrators in chief of Cameron. He testifies to his reception of the Confederate money from the administrator of Benjamin Askew, the purchaser, and to the refusal of a majority of the heirs of Cameron to accept payment in such currency. After his report of the payment, the administrator of Askew sold the lands, under order of the court, as the property of his decedent, to P. R. Thomason. He made a deed to this administrator about the first of January, 1864, but it was incorrect. He never made any other. He says that the defendant Hamlin Hudgens, who purchased the land from the heirs of Askew, knew in what currency the payment was made to him; but he does not know whether the defendants J. B. and T. J. Hudgens had such knowledge or not. As Hamlin Hudgens is shown to be a mesne purchaser who has no interest, it was not necessary to make him a party. *Merrett* v. *Phenix*, at June term, 1871. Knowledge, attributable to him, would have no bearing against the purchasers from him.

The defendants J. B. and T. J. Hudgens, who are in possession of the land as purchasers from their father, Hamlin Hudgens, deny any notice whatever of the kind of currency received by the administrator of Cameron. The only tendency of the evidence towards knowledge on their part is the inference derivable from such notice as their father may have had, and may be supposed to have communicated to them on account of his relationship to them. This inference is not permissible against their positive testimony to the contrary, and the consideration that their father may have purposely withheld the information, in order that they might be purchasers without notice.

The deed which Hudspeth says he made, as administrator of Cameron, to the administrator of Askew, was not produced, either in original or by record; nor was its absence accounted for, except by the death of the party to whom it was made. But its existence was a fact provable by parol. The testimony respecting it was received without objection. This, with the record of the proceedings in the probate court, reciting the confirmation of the sale, the payment of the purchase-money, and the order for making title, is sufficient to avoid the imputation of constructive notice.

The recital of the payment of the purchase-money, contained in the order to make title, as it could have been so entered on the statement and affidavit of the administrator alone, is not an estoppel by admission or judgment against the

complainant · Balkum, because the purchaser is not estopped by it. The proceeding was not 'such a one as required a contest about the payment between the administrator and the purchaser ; and if there had been one, the probate court had no jurisdiction to determine it conclusively. In *Dugger* v. *Tayloe* (46 Ala. 320), parol evidence of the non-payment of the purchase-money was held to be inadmissible after conveyance made by order of the court on the application of the purchaser, in an ejectment suit brought by the heirs of the decedent against the purchaser. Some stress is laid on the necessity of determining the payment of the purchase-money. But the basis of the decision is the change of title under the decree of the court, which, in that form of action, the excluded evidence tended to nullify. The enforcement of the vendor's lien is not in abrogation of the decree of sale and the conveyance. The ascertainment of payment is incidental and collateral. It is an inference from the order to convey, which should not be made without it, just as the death of the person is supposed, and to some degree must be found, in the grant of letters of administration on his estate, or the probate of his will. Starkie on Ev. 309. So the probate court, in ordering the sale of a decedent's land, must find that it belonged to him ; but the finding is not conclusive, else, as the proceeding is *in rem*, it would be an adjudication of title in him, good against all the world.

The bill is not subject to demurrer, because the heirs of Cameron were not made parties. They have the right to file such a bill. But so has the administrator. The statutes authorize the sale and distribution through him ; and having made the sale, it becomes his duty to see to the collection of the purchase-money. He represents the heirs, and is liable to them if he takes insufficient security, or fails to collect the money when it might have been done.

The decree is reversed, and the cause remanded.